UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NICOLE EBRON,                                       :
                                                    :
               Plaintiff,                          :
                                                    :   ECF CASE
           v.                                       :
                                                    :   08 Civ. 144 (AJP)
THE UNITED STATES OF AMERICA,                       :
                                                    :
               Defendant.                          :
                                                    :
------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
# IN LIMINE TO EXCLUDE CERTAIN EVIDENCE

                                       MICHAEL J. GARCIA
                                       United States Attorney
                                       *Attorney for Defendant*
                                       86 Chambers Street, Third Floor
                                       New York, New York 10007
                                       Telephone:  (212) 637-2721/2701
                                       Facsimile:   (212) 637-2686

TOMOKO ONOZAWA
SERRIN TURNER
Assistant United States Attorneys
     – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

POINT I:    THE COURT SHOULD EXCLUDE EXPERT TESTIMONY OUTSIDE THE
            SCOPE OF PLAINTIFF'S EXPERT DISCLOSURE AND DISMISS TWO OF
            PLAINTIFF'S CLAIMS ...................................................................................................3

            A.   The Court Should Preclude Plaintiff From Offering Expert Testimony
                 on the Issue of Lack of Informed Consent, Because It Is Beyond the
                 Scope of Plaintiff's Rule 26 Expert Disclosures .............................................3

            B.   The Court Should Dismiss Plaintiff's Claim Based on Lack of
                 Informed Consent Because It Is Unsupported by Any Expert
                 Evidence ..........................................................................................................6

            C.   The Court Should Preclude Plaintiff from Offering Expert Testimony
                 on the Issue of Dr. Gayle's Alleged Failure to Properly Treat Plaintiff
                 on January 12, 2004, Because It Is Beyond the Scope of Plaintiff's
                 Rule 26 Expert Disclosures ..............................................................................7

            D.   The Court Should Dismiss Plaintiff's Medical Malpractice Claim
                 Based on Dr. Gayle's Alleged Failure to Properly Treat Plaintiff on
                 January 12, 2004, Because It Is Unsupported by Any Expert Evidence ..........8

POINT II:   THE COURT SHOULD PRECLUDE PLAINTIFF FROM OFFERING
            INADMISSIBLE HEARSAY STATEMENTS ABOUT THE CAUSE AND
            PROPER TREATMENT OF HER INJURIES ........................................................9

POINT III:  THE COURT SHOULD PRECLUDE PLAINTIFF FROM OFFERING
            EVIDENCE OF MEDICAL EXPENSES AND OUT-OF-POCKET EXPENSES
            BECAUSE PLAINTIFF DOES NOT PAY FOR HER MEDICAL CARE, AND
            HER EXPENSES ARE BASED ON SPECULATION AND CONJECTURE .......11

CONCLUSION ................................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Arkin v. Gittleson,*
  32 F.3d 658 (2d Cir. 1994) ............................................................................................... 8

*Evans v. Port Authority of New York and New Jersey,*
  192 F. Supp. 2d 247 (S.D.N.Y. 2002) .............................................................................. 2

*Ford v. United States*, No. 98 Civ. 6702 (THK),
  2000 WL 1745044 (S.D.N.Y. Nov. 27, 2000) ................................................................. 8

*Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.,*
  93 Civ. 8298 (KTD)(RLE), 1996 WL 469660 (S.D.N.Y. Aug. 16, 1996) ...................... 5

*Gold by Gold v. United Health Servs. Hosps., Inc.,*
  95 N.Y.2d 683 (2001) .................................................................................................... 12

*Greenfield v. Memorial Sloan Kettering Hosp.,*
  No. 95 Civ. 7658 (KTD), 2000 WL 351395 (S.D.N.Y. Apr. 5, 2000) ........................... 7

*Hegger v. Green,*
  646 F.2d 22 (2d Cir. 1981) .............................................................................................. 8

*Highland Capital Mgmt., L.P. v. Schneider,*
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................. 2

*In re Motel 6 Sec. Litig.,*
  161 F. Supp. 2d 227 (S.D.N.Y. 2001) .......................................................................... 5, 6

*Kourkounakis v. Russo,*
  No. 05-2927-CV (JSR), 2005 WL 1036201 (S.D.N.Y. May 4, 2005) ............................ 7

*Lyons v. McCauley,*
  675 N.Y.S.2d 375 (2d Dep't 1998) .................................................................................. 8

*Marson v. United States,*
  No. 84 Civ. 7348 (MJL), 1987 WL 12407 (S.D.N.Y. June 5, 1987) .............................. 9

*Mickens v. LaSala,*
  779 N.Y.S.2d 115 (2d Dep't 2004) ................................................................................ 11

*Milano by Milano v. Freed,*
  64 F.3d 91 (2d Cir. 1995) ................................................................................................ 8

*Palmieri v. Defaria,*
  88 F.3d 136 (2d Cir. 1996) .............................................................................................. 2

*Perez v. United States*,
   85 F. Supp. 2d 220 (S.D.N.Y. 1999) .................................................................................. 8

*Point Productions, A.G. v. Sony Music Entm't*,
   No. 93 Civ. 4001 (NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ................................ 4, 5

*Rodriguez v. New York City Health and Hosps. Corp.*,
   858 N.Y.S.2d 99 (1st Dep't 2008) ...................................................................................... 6

*Shatkin v. McDonnell Douglas Corp.*,
   727 F.2d 202 (2d Cir. 1984) ............................................................................................... 2

*Sitts v. United States*,
   811 F.2d 736 (2d Cir. 1987) ............................................................................................... 8

*Swendowski v. Ethicon*,
   775 N.Y.S.2d 718 (4th Dep't 2004) .................................................................................. 11

*United States v. Corr*,
   543 F.2d 1042 (2d Cir. 1976) ............................................................................................. 2

*United States v. Funds Held in the Name or For the Ben. of John Hugh Wetterer*,
   991 F. Supp. 112 (E.D.N.Y. 1998) ................................................................................... 10

*Williams v. Dow Chemical Co.*,
   No. 01 Civ. 4307 (PKC), 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ............................. 10

**Statutes**

N.Y. C.P.L.R. § 4401-a .............................................................................................................. 6

N.Y. Pub. Health Law § 2805-d ................................................................................................. 6

N.Y. Soc. Serv. Law § 104-b ................................................................................................... 12

**Rules**

Fed. R. Civ. P. 26(a) .................................................................................................................. 4

Fed. R. Civ. P. 26(e)(1) .............................................................................................................. 4

Fed. R. Civ. P. 37(c) .............................................................................................................. 4, 5

Fed. R. Evid. 104 ...................................................................................................................... 2

Fed. R. Evid. 401 ................................................................................................................. 2, 10

Fed. R. Evid. 402 ................................................................................................................. 2, 10

Fed. R. Evid. 801 .......................................................................................................................... 10

Fed. R. Evid. 802 .......................................................................................................................... 10

Fed. R. Evid. 803 .......................................................................................................................... 10

Fed. R. Evid. 803(4) ..................................................................................................................... 10

Defendant, the United States of America (the "Government"), by its attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to exclude certain evidence at trial.

## PRELIMINARY STATEMENT

Plaintiff, Nicole Ebron, is suing the Government for medical malpractice which allegedly occurred in connection with a routine tetanus vaccination that she received at the Parkchester Family Practice ("Parkchester") on January 2, 2004. Specifically, plaintiff alleges that: (1) Bettie Laverne Gilmore, L.P.N. ("Nurse Gilmore"), failed to sterilize the site of the injection before giving the shot because Parkchester ran out of alcohol swipes that day, *see* Compl. ¶¶ 28-30; (2) plaintiff's primary care physician at Parkchester, Dr. Eric Gayle, M.D. ("Dr. Gayle"), and Nurse Gilmore failed to inform plaintiff of the known risks of receiving the vaccination, *see* Compl. ¶ 37; and (3) Dr. Gayle improperly prescribed Tylenol and Biaxin, an antibiotic, when plaintiff returned to Parkchester on January 12, 2004, with symptoms of redness, peeling, warmth, tenderness, and induration at the site of the injection, and was diagnosed with cellulitis of the arm. *See* Compl. ¶¶ 46-50.

To support her claims, plaintiff may seek to offer at trial the following inadmissible evidence: (1) testimony from plaintiff's only testifying expert, Dr. Kenneth R. Ackerman, M.D., relating to the second and third claims above, that is outside the scope of his expert report; (2) inadmissible hearsay statements from non-party medical personnel regarding the cause and treatment of the infection which developed at the site of the tetanus shot; and (3) speculative evidence of plaintiff's past and future medical expenses and past and future out-of-pocket costs. As set forth below, the Court should preclude plaintiff from seeking to introduce this evidence at trial.

Furthermore, if the Court excludes expert testimony relating to plaintiff's second and third claims as outside the scope of Dr. Ackerman's expert report, the Court should also dismiss those claims before trial because plaintiff is required to, but cannot, support those claims with admissible expert evidence.

## ARGUMENT

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104.

The Court may rely on the Federal Rules of Evidence and its own broad discretion in determining whether or not to exclude certain evidence at trial. *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984). Ordinarily, evidence is admissible so long as it is relevant, *see* Fed. R. Evid. 401-402, and not otherwise barred under the Federal Rules of Evidence. The proponent of the evidence, however, bears the burden of proving that it is admissible. *Evans v. Port Authority of New York and New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002).

## POINT I

## THE COURT SHOULD EXCLUDE EXPERT TESTIMONY OUTSIDE THE SCOPE OF PLAINTIFF'S EXPERT DISCLOSURE AND DISMISS TWO OF PLAINTIFF'S CLAIMS

**A. The Court Should Preclude Plaintiff From Offering Expert Testimony on the Issue of Lack of Informed Consent, Because It Is Beyond the Scope of Plaintiff's Rule 26 Expert Disclosures**

Plaintiff's Rule 26(a)(2) disclosure, dated July 8, 2008, provided notice of her intent to call Dr. Kenneth Ackerman, M.D., as a testifying expert and set forth the following opinions on which Dr. Ackerman is expected to testify:

> It is anticipated that at the time of trial that Dr. Ackerman, M.D., will testify as to the defendants' departure from good and accepted medical practice and procedure in the care and treatment that the defendant provided Ms. Nicole Ebron. It is also anticipated that Dr. Ackerman, M.D. will offer the opinion that the defendants failed to properly prepare Ms. Ebron's tetanus injection site for the tetanus injection that was given to Ms. Nicole Ebron and that the failure to properly prepare the tetanus injection site prior to the tetanus injection was a deviation from good and accepted medical practice and procedure which led to, and was the cause of, the infection and the scarring sustained by Ms. Ebron. It is further anticipated that Dr. Ackerman, M.D.'s [t]estimony will be that the scarring sustained by Ms. Ebron was the result of the defendants['] negligence and medical malpractice and that the scarring is permanent.

*See* Ex. A, ¶ 1.[1]

Consistent with this disclosure, Dr. Ackerman's one-and-a-half page report dated July 8, 2008, opines that "[a]n injection was performed without appropriate skin preparation," and that "[t]he failure to prepare the injection site by proper cleansing is a departure from the standard of care and is a causal result of the injury in this case." *See* Ex. B, at 1. Also consistent with this disclosure, Dr. Ackerman's expert report does *not* address plaintiff's second cause of action— *i.e.,* whether Dr. Gayle and Nurse Gilmore's alleged failure to advise plaintiff of the risks of the

---

[1] All citations to "Ex. __" are to exhibits to the Declaration of Tomoko Onozawa, dated September 9, 2008.

3

vaccination meant that plaintiff's consent was legally insufficient. *Id.* At his August 13, 2008 deposition, Dr. Ackerman even acknowledged that his expert report did not contain any opinion with respect to this claim. *See* Ex. C at 42:14-20. Dr. Ackerman further admitted he was not offering any expert opinion in this case for this claim. *See* Ex. C at 40:19-41:21.[2] In the parties' Proposed Joint Pre-Trial Order, plaintiff has included the lack of informed consent claim as an issue to be tried. For the reasons below, plaintiff should be precluded at trial from belatedly introducing expert testimony on her claim for lack of informed consent.

Rule 26(a)(2)(B) provides that a testifying expert's report "shall contain a *complete statement of all opinions* the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). In addition, Rule 37(c)(1) mandates that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(a)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing or on a motion any witness or information not so disclosed." *Point Productions, A.G. v. Sony Music Entm't*, No. 93 Civ. 4001 (NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (citing Fed. R. Civ. P. 37(c)(1)). The

---

[2] After Dr. Ackerman made the above admissions on the record, plaintiff's counsel asked Dr. Ackerman whether, in his expert opinion, a medical practitioner who intends to give a shot without first disinfecting the site should inform the patient of the increased risk of infection. *See* Ex. C at 44:22-47:11. Not only should this testimony be precluded as a last-minute attempt to fill an obvious gap in plaintiff's expert disclosure, but it should be precluded on relevance grounds because it conflates the elements of plaintiff's claim for lack of informed consent with the elements of her medical malpractice claim. The doctrine of informed consent addresses a doctor's failure to inform a patient of the reasonably foreseeable risks of *professional treatment or diagnosis*—not of malpractice. *See* N.Y. Pub. Health Law § 2805-d. Otherwise, every act of malpractice would automatically include a claim for lack of informed consent to that malpractice.

exclusion of evidence which was not properly disclosed during discovery "is 'self executing' and is an 'automatic sanction' that is designed to provide a strong inducement for disclosure of relevant material that the disclosing party expects to use as evidence." *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001) (quoting *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 93 Civ. 8298 (KTD)(RLE), 1996 WL 469660, at *3 (S.D.N.Y. Aug. 16, 1996)). When determining whether Rule 37's exclusion sanction applies, courts in this Circuit consider "(1) the party's explanation for the delay in advancing the new evidence; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." *Point Productions*, 2004 WL 345551, at *9.

The balance of these factors weighs in favor of exclusion. Given that plaintiff's complaint pleaded the lack of informed consent claim as a basis for relief, and that Dr. Ackerman had access to the necessary facts before he prepared his July 8, 2008 expert report, *see* Ex. B at 1, there is no conceivable explanation that justifies admitting trial testimony on an expert opinion that was clearly omitted from plaintiff's expert disclosure. Secondly, because fact and expert discovery closed on August 14, 2008, the Government will be prejudiced at trial if Dr. Ackerman is allowed to untimely supplement his report by offering an expert opinion on plaintiff's claim for lack of informed consent, the data and information on which he relied, and the reasons and bases underlying that opinion. Finally, this Court has made clear that it will not grant any requests for a continuance of the trial. *See* Memo Endorsed on Letter from Tomoko Onozawa, to Magistrate Judge Peck (September 2, 2008).

Accordingly, under Rule 37, Dr. Ackerman should be precluded from offering any expert testimony with respect to Parkchester's alleged failure to inform plaintiff of the known risks of receiving the vaccination. *See e.g., Point Productions,* 2004 WL 345551, at *7, *9 (granting

5

motion to strike additional affidavits proffered by expert witness after expert report was served and all discovery had closed, where affidavits were "designed to fill a significant and logical gap in the first report"); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d at 242-43 (granting motion to strike expert affidavit submitted with summary judgment motion, where affidavit contained evidence beyond the scope of the expert's report).

**B.     The Court Should Dismiss Plaintiff's Claim Based on Lack of Informed Consent Because It Is Unsupported by Any Expert Evidence**

If the Court grants the Government's motion to preclude any testimony from Dr. Ackerman regarding plaintiff's claim of lack of informed consent, on the ground that such an opinion was omitted from plaintiff's expert disclosure, it should also dismiss plaintiff's claim of lack of informed consent altogether.  New York law defines lack of informed consent to mean:

> [T]he failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as *a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed*, in a manner permitting the patient to make a knowledgeable evaluation.

N.Y. Pub. Health Law § 2805-d (emphasis added).

As a result, under New York law, a plaintiff making an informed consent claim must "adduce expert medical testimony in support of the alleged qualitative insufficiency of the consent." N.Y. C.P.L.R. § 4401-a.  If the plaintiff fails to do so, "[a] motion for judgment at the end of the plaintiff's case must be granted as to any cause of action for medical malpractice based solely on lack of informed consent . . . ." *Id.;* s*ee also Rodriguez v. New York City Health and Hosps. Corp.*, 858 N.Y.S.2d 99, 101 (1st Dep't 2008) ("Where a plaintiff fails to adduce expert testimony establishing that the information disclosed to the patient about the risks inherent in the procedure is qualitatively insufficient, the cause of action for medical malpractice based on lack of informed consent must be dismissed . . . ."); *Kourkounakis v. Russo*, No. 05-2927-CV

6

(JSR), 2005 WL 1036201, at *3 (S.D.N.Y. May 4, 2005), *aff'd*, 167 Fed. Appx. 255, 257 (2d Cir. 2006) (dismissing lack of informed consent claim where plaintiff's claim was unsupported "by competent evidence from a qualified expert"); *Greenfield v. Memorial Sloan Kettering Hosp.*, No. 95 Civ. 7658 (KTD), 2000 WL 351395, at *6 (S.D.N.Y. Apr. 5, 2000) (New York law requires expert testimony to prove a case of medical malpractice based on lack of informed consent). Absent expert medical testimony on whether plaintiff's consent was insufficiently informed, plaintiff's second cause of action must be dismissed.

**C.   The Court Should Preclude Plaintiff from Offering Expert Testimony on the Issue of Dr. Gayle's Alleged Failure to Properly Treat Plaintiff on January 12, 2004, Because It Is Beyond the Scope of Plaintiff's Rule 26 Expert Disclosures**

Plaintiff's Rule 26(a)(2) disclosure and Dr. Ackerman's expert report are also silent on the issue of whether Dr. Gayle improperly prescribed Tylenol and Biaxin for plaintiff on January 12, 2004 and thus violated any accepted standards of care.[3] *See* Exs. A-B. At his deposition, Dr. Ackerman stated he was not proffering an opinion with respect to this claim, *see* Ex. C at 40:19-23; 41:22-25, and acknowledged that his own report did not include any opinions with respect to this claim. *See id.* at 42:21-43:2. For the same reasons set forth above, *see supra* at 4-5, Dr. Ackerman should be precluded from offering any expert testimony on plaintiff's claim that Dr. Gayle's act of prescribing Biaxin and Tylenol deviated from accepted standards of medical care.

---

[3] Plaintiff appears to have abandoned her third cause of action, as she has not listed it in the parties' Proposed Pre-Trial Order as a contention of law. However, in light of plaintiff's failure to stipulate to a dismissal of this third claim, the Government will assume it is still part of the issues to be tried in this case.

**D.     The Court Should Dismiss Plaintiff's Medical Malpractice Claim Based on Dr. Gayle's Alleged Failure to Properly Treat Plaintiff on January 12, 2004, Because It Is Unsupported by Any Expert Evidence**

Likewise, if the Court grants the Government's motion to preclude any testimony from Dr. Ackerman related to plaintiff's claim that Dr. Gayle's act of prescribing Biaxin and Tylenol "deviated from good and accepted medical and nursing practice," because that opinion was missing from his expert report, the Court must also dismiss that claim.

To prevail in a medical malpractice action under New York law, the plaintiff must prove: "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995) (quoting *Arkin v. Gittleson,* 32 F.3d 658, 664 (2d Cir. 1994)). New York law further provides that expert medical opinion testimony is required to make out both elements of medical malpractice. *See Sitts v. United States*, 811 F.2d 736, 739-40 (2d Cir. 1987) (citing New York cases and concluding "[i]t is well established in New York law that unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice"), *see also Milano*, 64 F.3d at 95; *Hegger v. Green*, 646 F.2d 22, 28 (2d Cir. 1981); *Ford v. United States*, No. 98 Civ. 6702 (THK), 2000 WL 1745044, at *4, *10 (S.D.N.Y. Nov. 27, 2000); *Perez v. United States*, 85 F. Supp. 2d 220, 226 (S.D.N.Y. 1999); *aff'd* 8 Fed. Appx. 48 (2d Cir. 2001); *Lyons v. McCauley*, 675 N.Y.S.2d 375, 376-77 (2d Dep't 1998) (in medical malpractice actions under New York law, "[e]xpert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause unless the matter is one which is within the experience and observation of the ordinary juror").

Whether Biaxin and Tylenol were the proper drugs for treating plaintiff's symptoms and diagnosis of cellultis on January 12, 2004, and whether the act of prescribing Biaxin and Tylenol

injured plaintiff involve matters beyond the experience and observation of the ordinary finder of fact. *See, e.g., Marson v. United States*, No. 84 Civ. 7348 (MJL), 1987 WL 12407, at *2 (S.D.N.Y. June 5, 1987) (adducing expert testimony for medical malpractice claim alleging that treating physicians improperly prescribed certain drugs that damaged plaintiff's vision and had other side effects). Accordingly, in the absence of expert testimony showing that the prescriptions breached the standard of care in the relevant medical community, and that the prescriptions proximately caused plaintiff's injury, plaintiff's third cause of action with respect to her treatment on January 12, 2004 must be dismissed.

## POINT II

### THE COURT SHOULD PRECLUDE PLAINTIFF FROM OFFERING INADMISSIBLE HEARSAY STATEMENTS ABOUT THE CAUSE AND PROPER TREATMENT OF HER INJURIES

At her deposition, plaintiff testified that she went to the emergency room of Jacobi Medical Center ("Jacobi") on January 13, 2004, after she suffered increased swelling and pain at the site of the injection. At Jacobi's emergency room, plaintiff was first seen by an unidentified nurse, who asked plaintiff what had happened to her arm. *See* Ex. D at 81:9-12. When plaintiff responded that she had simply received a tetanus vaccination during a routine physical examination, the nurse purportedly asked: "Were you injected without an alcohol swipe?" *Id.* at 81:13-23. Plaintiff contends this was the first time she realized that the cellulitis in her arm was caused by Nurse Gilmore's alleged failure to disinfect the site of the injection. *Id.* at 82:2-10.

An hour after her conversation with the nurse, plaintiff was next seen by an unidentified doctor, who also asked what had happened to her arm. *Id.* at 82:18-83:5. When plaintiff informed him that she had received a tetanus vaccination, the doctor purportedly asked her if the site of the injection had been cleaned first. *Id.* at 83:6-9. When plaintiff replied that it had not

9

been cleaned, the doctor allegedly volunteered: "That's why your arm is like that . . . . You are always supposed to be prepped first before you get injected with any form of a needle." *Id.* at 83:10-13.

In addition, plaintiff showed the doctor the bottle of Biaxin which Dr. Gayle had prescribed for her the day before. *Id.* at 84:20-85:4. According to plaintiff, the doctor told her: "This is not the antibiotic that he should have given you. Throw this away . . . . He should have never given you that medication. That is not a medication for what you have." *Id.* at 85:15-22.[4]

Jacobi is not a party to this action and none of its employees has been called to testify at trial as either a fact or an expert witness. Accordingly, the Court should preclude plaintiff from testifying about the above out-of-court statements made by the nurse and doctor as proof of the cause of her injury and the appropriate treatment for her injury, because they are inadmissible hearsay statements under Fed. R. Evid. 801 and 802 that do not fall under any of the exceptions in Fed. R. Evid. 803.[5]

---

[4] If the Court dismisses plaintiff's third cause of action, the Government also objects to this statement on relevance grounds, pursuant to Fed. R. Evid. 401 and 402.

[5] To the extent plaintiff may rely on Fed. R. Evid. 803(4) as an exception to the hearsay rule, that reliance would be completely misplaced, as the exception covers out-of-court statements made by a *patient* to a doctor for purposes of medical treatment or diagnosis. *See United States v. Funds Held in the Name or For the Ben. of John Hugh Wetterer*, 991 F. Supp. 112, 118-19 (E.D.N.Y. 1998) ("The hearsay exception for statements made to [a] physician for the purpose of treatment has a long history under common law."). Rule 803(4) is based on the assumption that "a patient will make truthful statements to a physician, because it is in the patient's own interest to speak truthfully to a physician." *Williams v. Dow Chemical Co*., No. 01 Civ. 4307 (PKC), 2004 WL 1348932, at *9 (S.D.N.Y. June 16, 2004).

# POINT III

## THE COURT SHOULD PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OF MEDICAL EXPENSES AND OUT-OF-POCKET EXPENSES BECAUSE PLAINTIFF DOES NOT PAY FOR HER MEDICAL CARE, AND HER EXPENSES ARE BASED ON SPECULATION AND CONJECTURE

In her Supplemental Responses to the Government's Interrogatories dated May 27, 2008, plaintiff asserted that she has paid or will pay $4,200 in past medical expenses, $11,800 in future medical expenses, $1,450 in past out-of-pocket expenses, and $4,400 in future out-of-pocket expenses.  *See* Ex. E, at 1.  Because plaintiff has never paid for her medical expenses, and has neither produced nor is in possession of any documents supporting any of these amounts and could not explain under oath how any of these figures were derived, the Court should preclude plaintiff from offering evidence of these expenses at trial.  *See Mickens v. LaSala*, 779 N.Y.S.2d 115, 117 (2d Dep't 2004) ("damages cannot be based on mere speculation, conjecture, or surmise").  Accordingly, plaintiff should be precluded from offering any evidence of past medical expenses at trial.  *Swendowski v. Ethicon*, 775 N.Y.S.2d 718, 718 (4th Dep't 2004) (affirming decision not to instruct jury on medical expenses where plaintiff failed to produced evidence of cost").

First, with respect to the claimed $4,200 for past medical expenses, plaintiff testified at her deposition that her medical bills are paid entirely by Medicaid.  *See* Ex. D at 116:15-118:3.  As New York juries are routinely instructed in malpractice actions:

> In considering the issue of damages, you must decide whether plaintiff actually suffered the loss (*e.g.,* wages, salary, medical expenses) that [he] claims.  An award to plaintiff for loss of payment of (wages, salary, medical expenses) must be *only for the amount that plaintiff actually lost, paid or is required to* pay.  Plaintiff may not recover for any expense that was paid by defendant or for any services that were provided free of charge.

11

New York Pattern Jury Instructions-Civil 2:300 (Dec. 2007) (emphasis added) (citing New York cases). Because plaintiff did not have to pay for any medical care related to the treatment of her arm, allowing her to recover for those costs would reap an undeserved windfall.

To the extent plaintiff may argue that recovery for past medical expenses is warranted under New York Social Services Law § 104-b, which establishes a lien for medical services paid by Medicaid, she is still not entitled to collect for the costs of her care. Section 104-b requires that any Medicaid lien be fully perfected by providing notice to the potentially responsible party (here, the Government) and by filing the notice of lien with the county clerk, both of which (notice and filing) must identify the amount of the asserted lien, in order to attach to a judgment in a personal injury action. *See* N.Y. Soc. Serv. Law § 104-b; *see also Gold by Gold v. United Health Servs. Hosps., Inc.*, 95 N.Y.2d 683, 689 (2001) (Medicaid lien does not attach to verdict until lien is "perfected in accordance with the statutory notice and filing provisions"). Not only has plaintiff failed to proffer evidence of any Medicaid lien, but she lacks the information needed to file such a lien. Indeed, plaintiff conceded under oath that she had never seen any records of her Medicaid billings, and had no personal knowledge as to where the $4,200 figure for past medical expenses even came from. *See* Ex. D at 118:10-120:9; 121:19-22. As a result, plaintiff should be precluded from offering any evidence of past medical expenses at trial.

Second, plaintiff's supplemental interrogatory responses claim future medical expenses in the amount of $11,800 for the "reasonable cost of revision(s) surgery for correction of the scarring as well as the reasonable cost of after-care treatment as would be required following said revision(s) surgery." *See* Ex. E at 2. However, plaintiff testified at her deposition that she has never consulted a doctor about corrective surgery and after-care treatment, has no documents reflecting the costs of corrective surgery and after-care treatment, and does not know how to

verify the "reasonable cost" of such surgery and treatment. *See* Ex. D at 125:24-129:12. Plaintiff further admitted that she does not expect to receive medical treatment in the future for her arm, and that no doctor has advised her of any necessary surgical procedures in the future. *Id.* at 112:23-113:5. In addition, to the extent any of plaintiff's future medical expenses are covered by Medicaid, she is not entitled to recover those expenses for the reasons set forth above. Plaintiff should therefore be precluded from offering any evidence of future medical expenses at trial.

Third, plaintiff's supplemental interrogatory responses claim past out-of-pocket expenses in the amount of $1,450, which are based on her "recollection of out of pocket expenses for such items as medications, bandages, gauze, vitamins, ointments, creams, which were and continue to be needed for and used in the care of the injury, as well as the costs of transportation to and from doctors, hospitals, and clinics for the care of the injury." *See* Ex. E at 3. Again, plaintiff has neither produced nor is in possession of any documents supporting this amount. *Id.* Plaintiff also testified at her deposition she did not know how to verify the accuracy of this estimate. *See* Ex. D at 120:15-121:18. For the same reasons stated above, plaintiff should also be precluded from offering any evidence of past out-of-pocket expenses at trial.

Fourth, plaintiff's supplemental interrogatory responses claim future out-of-pocket expenses in the amount of $4,400, which represent her unsubstantiated "understanding of what her out of pocket costs will be in the future for the care of the scarring at the injury site both with and without revision surgery and the need for lifetime maintenance and protective care of the scarring at the injury." *See* Ex. E at 3. Plaintiff has neither produced nor is in possession of any documents supporting this amount. In addition, she testified at her deposition that no one has informed her that her out-of-pocket costs will be $4,400, she has never seen documents showing

13

that her out-of-pocket costs will be $4,400, and lacks personal knowledge as to how the $4,400 estimate was calculated.  *See* Ex. D at 124:3-23.  Given the lack of evidence, plaintiff's purported future out-of-pocket expenses should be excluded because they are completely unreliable and speculative.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant's motion *in limine* in its entirety.

Dated:   New York, New York
         September 9, 2008

                            MICHAEL J. GARCIA
                            United States Attorney for the
                            Southern District of New York,
                            *Attorney for Defendant*


By:         /s/ Tomoko Onozawa
       TOMOKO ONOZAWA
       SERRIN TURNER
       Assistant United States Attorneys
       86 Chambers Street, Third Floor
       New York, New York 10007
       Telephone:  (212) 637-2721 (Onozawa)
                        (212) 637-2701 (Turner)
       Facsimile:  (212) 637-2686
       E-mail:  tomoko.onozawa@usdoj.gov
                 serrin.turner@usdoj.gov